**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:09-CV-00041-TBR**

**OHIO GRAPHCO, INC. and
UNLIMITED GRAPHICS, INC.**                                    **PLAINTIFFS**

v.

**RCA CAPITAL CORP. and
ALL POINTS CAPITAL CORP.**                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiff, Ohio Grapcho, Inc.'s ("Graphco"), Motion for Summary Judgment (Docket #17). The Defendant, All Points Capital Corp. ("APC"), has filed a response (Docket #30). The Plaintiff has filed a reply (Docket # 33). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED.

**BACKGROUND**

On November 14, 2008, Unlimited Graphics, Inc., ("UGI") and Graphco executed a Sales Contract for the sale of a printing press equipment. Graphco contracted to sell to UGI the Press Line for $199, 247.00 and UGI paid a down payment of $9, 247.00 directly to Graphco on November 17, 2008. The Sales Contract specifically stated, in a "Reservation of Title" clause, that Graphco retained exclusive legal title and right of possession of the Press Line until the $190,000.00 balance of the price was paid in full by UGI. Graphco alleges it has not been paid. The Press Line was delivered to UGI's premises in La Center, Kentucky.

On November 17, 2008, UGI entered a lease agreement with RCA Capital Corp. ("RCA") for the Press Line. The lease agreement stated that RCA would buy the Press Line from Graphco by paying the remaining $190,000.00 balance. Upon receiving title to the Press Line from Graphco, RCA would lease the equipment to UGI. On November 19, 2008, RCA filed a Uniform Commercial

Code ("UCC") Financing Statement with the Kentucky Secretary of State's Office claiming a purchase money security interest in the Press Line and naming UGI as debtor and RCA as a secured creditor.

On November 20, 2008, RCA prepared and issued a "Purchase Order" to Graphco for the Press Line that was the subject of the Graphco Sales Contract and the proposed UGI equipment lease agreement.  In the Purchase Order, RCA agreed to pay Graphco the balance of the purchase price.  This document states that it expires on December 20, 2008.

Graphco alleges that RCA never acquired the Press Line from Graphco and never paid Graphco any part of the $190,000.00 balance due.  Graphco alleges that the agreement between UGI and RCA was never consummated because RCA never funded payment for the Press Line by paying Graphco the remaining $190,000.00.  Graphco further alleges the Purchase Order never became a valid or enforceable agreement between Graphco and RCA because Graphco never signed the Purchase Order; never canceled, waived or otherwise terminated its Sales Contract with UGI; and never delivered possession of the Press Line to RCA.

On January 7, 2009, RCA attempted to assign its rights, title and interest in the allegedly executed lease with UGI to defendant APC.  Graphco alleges that at this time, RCA had not actually purchased the Press Line from Graphco nor did RCA have a contract or other agreement with Graphco to purchase the Press Line.  On January 20, 2009, Graphco filed a UCC Financing Statement with the Kentucky Secretary of State.  On January 30, 2009, APC or RCA filed an assignment of RCA's security interest in the Press Line to APC with the Kentucky Secretary of State's Office.

RCA filed for bankruptcy in the District of New Jersey on April 8, 2009 as Case No. 09-

18884 DIS; a voluntary Chapter 7 liquidation. RCA has not appeared or responded nor has it filed with this Court any formal notice of its bankruptcy.

This case was brought by Graphco to have declared the priority of competing security interests in the Press Line. APC allegedly claims a first and a best security interest in the Press Line as a result of the assignment of the rights from RCA. Graphco seeks to have the RCA/APC Security Interest deemed null and void and stricken from the records of the Secretary of State's Office. Additionally, Graphco seeks for the Court to determine the priority of any valid security interests and find that the UCC Financing Statement filed by Graphco on January 20, 2009, should be deemed the first and best lien on the Press Line. Graphco also seeks the Court to hold that Graphco retains its original legal and possessory interest in the Press Line as set forth in the Graphco/UGI Sales Contract by the "Reservation of Title" clause.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The nonmoving party must present more than a mere

scintilla of evidence in support of his position; the nonmoving party must present evidence on which the trier of fact could reasonably find for the nonmoving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The issue in this case is one of the priority of competing security interests in the Press Line. Both Graphco and APC claim a security interest in the Press Line and both parties assert that their security interest has priority over the other. However, before getting to the priority rules, the Court must first look at whether the security interests in question have attached and whether they are perfected or unperfected.

### I. Attachment and Perfection

First, a security interest attaches "when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." KRS §355.9-203(1). A security interest is enforceable only if: (a) value has been given; (b) the debtor

has rights in the collateral or the power to transfer rights in the collateral; and (c) the debtor has authenticated a security agreement that provides a description of the collateral. KRS §355.9-203(2).

The requirement that value be given requires that the creditor give value for the security interest. *See* 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, §31-3 (e) (5th ed.). Kentucky's UCC states:

> a person gives value for rights if the person acquires them:
> (1) In return for a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection;(2) As security for, or in total or partial satisfaction of, a preexisting claim;(3) By accepting delivery under a preexisting contract for purchase; or (4) In return for any consideration sufficient to support a simple contract.

KRS §355.1-204.

The requirement that the debtor have rights in the collateral can be satisfied by possession of the collateral. 4 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE, §31-3 (f) (5th ed.); *see also Thrift, Inc. v. A.D.E., Inc.*, 454 N.E.2d 878, 37 UCC 545 (Ind.App.1983) (automobile dealer who purchased and took possession of automobiles but did not pay for them, who had not received certificates of title, bills of sale or odometer verification statements, acquired an interest in the automobiles sufficient to permit secured party's security interest to attach when the dealer received possession of the automobiles). Furthermore, "[t]he debtor may have sufficient rights despite "retention of title" clauses (or clauses retaining documents of title) . . . ." 4 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE, §31-3 (f) (5th ed.)(citing *In re Keystone General, Inc.*, 135 B.R. 275, 279 (Bankr.S.D.Ohio 1991) (holding that "[t]he statute is clear. The retention of title merely results

5

in the creation of a security interest."))[1]. In determining whether the debtor has sufficient rights in the collateral, courts have looked at factors like control over the property and whether risk of ownership has shifted to the debtor. *Omaha v. Pleasant Hollow Farm, Inc.*, 532 N.W.2d 60, 63 (S.D.1995) (holding "control over the collateral, rather than record ownership, is the key factor in determining a debtor's rights in collateral"); *Kinetics Technology Int'l Corp. v. Fourth Nat. Bank of Tulsa*, 705 F.2d 396, 399 (10th Cir.1983); *Amfac Mortgage Corp. v. Arizona Mall*, 618 P.2d 240 (Ariz. Ct. App.1980)(holding a debtor acquires sufficient rights when the debtor obtains possession of collateral, even if contingent possession, pursuant to an agreement with the seller or manufacturer); *Connecticut Bank & Trust Co. v. Schindelman (In re Bosson)*, 432 F.Supp. 1013 (D.Conn.1977), (holding under prevailing case law a debtor had sufficient rights when the debtor acquired possession of collateral pursuant to a sales contract or like agreement).

A security agreement is defined by the UCC as an agreement which creates or provides for a security interest. KRS §355.9-102(1)(bu). In order for the third requirement of attachment to be met there must be a document signed by the debtor which creates or provides for a security interest and describes the collateral. The description must "reasonably indentif[y] what is described", e.g., a specific listing, but must not generically state "all debtors property." KRS 355. 9-108. The document creating or providing for the security interest need not be labeled a security agreement in order to satisfy the statutory requirements; the document need only "show, to an objective observer, that debtor intended to transfer an interest in personal property as security to a creditor."4 WHITE

---

[1]KRS §355.9-202 states "the provisions of this article with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor." Therefore, the reservation of title by Graphco is immaterial to determination of the validity or priority of security interests.

& SUMMERS, UNIFORM COMMERCIAL CODE, §31-3 (a) (5th ed.); *see also In re Owensboro Canning Co., Inc.*, 46 B.R. 607 (Bankr.W.D.Ky.1985).

A security interest may become perfected upon several different actions by the secured party; however, the most common, and the one applicable to the collateral at hand, is filing of a UCC Financing Statement with the Secretary of State. KRS §355.9-310. The law governing the perfection of a security interest is determined by the location of the collateral, in this case, Kentucky. KRS §355.9-301. When using filing to perfect a security interest, the security interest is perfected upon filing if all requirements of attachment are met, or immediately upon attachment, if the Financing Statement is filed before attachment has taken place. KRS §355.9-310.

### A. Graphco Security Interest

Graphco entered a Sales Contract with UGI on November 14, 2008. Pursuant to this contract, Graphco agreed to sell to UGI the Press Line for $199, 247.00 and UGI paid a down payment of $9,247.00 directly to Graphco on November 17, 2008. The Sales Contract specifically stated, in a "Reservation of Title" clause, that Graphco retained exclusive legal title and right of possession of the Press Line until the $190,000.00 balance of the price was paid in full by UGI.

In the instance of the Graphco/UGI Sales Contract it appears a valid security interest attached to the Press Line as collateral. First, there is evidence there was value given by the creditor. Graphco gave UGI $190,000.00 in credit when it provided the Press Line to UGI in expectation of future payment. Additionally, the debtor acquired rights in the collateral. Graphco states that the Press Line was delivered to UGI's premises in La Center, Kentucky. Even though the Sales Contract contained a reservation of title, as stated, possession of the collateral alone confers sufficient rights in the collateral on the debtor. Finally, there was an authenticated security

agreement. The Sales Contract between UGI and Graphco is a document which created or provided for a security interest because of its "Reservation of Title" language. The Sales Contract was signed by Gary Damron on behalf of UGI, the debtor. The Sales Contract also described the collateral rather specifically so it could easily be identified. The Sales Contract states "Ryobi 4 color offset press including console, auto plate loading, auto blanket wash" and other accessories. Therefore, the security interest of Graphco in the Press Line attached when the last of these three requirements was complete: debtor acquired rights to the collateral through delivery of the Press Line to UGI.

Graphco states that it filed its Financing Statement on January 20, 2008. Since the requirements of attachment had been met prior to that date, the date of perfection for Graphco is January 20, 2009.

### B. RCA/UGI Security Interest

RCA entered a lease agreement with UGI for which it filed a UCC Financing Statement on November 19, 2008. According to this agreement, RCA would provide payment of UGI's balance to Graphco and RCA would acquire title to the Press Line which it would then lease to UGI. In this UCC Financing Statement, RCA claimed a purchase money security interest in the Press Line and named UGI as debtor and RCA as a secured creditor. In order for this security interest of RCA to attach to the collateral, Press Line, the three requirements must be met.

There is a dispute between the parties as to whether or not value was given. In order for the security to attach there must be value given by the creditor, in this case, RCA. The Kentucky UCC states four ways value may be given by a creditor: extension of credit to the debtor; total or partial satisfaction of a preexisting claim; by accepting delivery under a preexisting contract for purchase;

or in return for any consideration sufficient to support a simple contract. KRS §355. 1-204. Graphco maintains that there was no value given for this contract by RCA because RCA never paid Graphco any amount of the balance owed on the Press Line. In response, APC has provided evidence that Graphco was in fact paid $100,000.00 on December 9, 2008.

Value given, however, need not always be in the form of monetary value and the question is whether there was value given to the debtor, UGI, rather than to Graphco, who was not a party to the security interest between UGI and RCA. Looking to the fourth test for value under the UCC, consideration to support a simple contract, courts have held that consideration in the form of a promise is value given for the purposes of attachment. 4 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE, §31-3 (e) (5th ed.) (citing *In re IPS Systems, Inc.*, 205 B.R. 88 (Bankr.S.D.Tex.1997); *Adelvision L.P. v. Groff*, 859 F.Supp. 797 (E.D.Pa.1994)). According to Kentucky law, "[i]t is a fundamental principle . . . that a consideration sufficient to uphold a contract need not be the payment of money, or the delivery of property, since it is sufficient if the thing agreed to is 'a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.'" *Wallace v. Cook*, 227 S.W. 279, 281 (Ky. 1921) (citations omitted). Benefit is defined by the court as "that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled" and detriment is defined as "that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise." *Id.*

In *In re IPS Systems, Inc.*, the court held that a law firm's promise to represent a party was considered value given for purposes of attachment. 205 B.R. 88, 89 (Bankr.S.D.Tex.1997). In *Adelvision L.P. v. Groff*, the court found adequate value given when a party promised to purchase

9

another's excising loans in exchange for an additional security interest. 859 F.Supp. 797, 805 (E.D.Pa.1994). Both of these cases are analogous to the case at hand. Here, RCA promised to pay the balance due to Graphco on the Press Line in exchange for a security interest in the Press Line. The promise to pay Graphco, whether or not fulfilled, was value given for purposes of attachment.

As to the requirement that the debtor have rights in the collateral, the Court finds that although UGI did not have title to the Press Line, UGI was in possession of the collateral and therefore had rights to the collateral. Graphco has repeatedly cited the reservation of title clause in the Sales Contract; however, it is well settled law that a debtor need not have title in order to have rights to the collateral, e.g., possession is sufficient. 4 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE, §31-3 (f) (5th ed.).

Finally, it appears that there was an authenticated security agreement describing the collateral. UGI, the debtor, signed the "Acceptance of Agreement" which created or provided for the security interest and described the collateral as "one new Ryobi Model 3304HA Four Color Offset Press. . . including console, auto plate loading, auto blanket wash . . ." and other accessories. Therefore, all three requirements for attachment have been met and RCA had an attached security interest in the Press Line.

RCA filed a Financing Statement on November 19, 2008. The Court finds that the requirements of attachment had been met on that date: RCA, the creditor, had given value by promising to pay Graphco; UGI, the debtor, had rights in the collateral; and a valid security agreement was authenticated. Even if the Court found that the promise of RCA was not value given, APC has provided evidence in the form of bank statements that RCA did in fact provide payment of $100,000.00 to Graphco on December 9, 2008. If, the Court applies the argument set forth by

Graphco that no value could be given until Graphco was paid, the date of perfection for RCA's security interest would be December 9, 2008, when attachment was reached after filing.

Graphco also asserts that the filing on November 19, 2008, was illegal and invalid. However, the Court finds this assertion incorrect. Again, for the reasons stated previously, the Court finds there was value given and other requirements of attachment met. In addition, the Court notes that attachment is not required in order for a secured party to file a Financing Statement. The requirements for filing a Financing Statement are set out in KRS §355.9-502 and it appears the key requirement is authorization, generally in the form of an authenticated security agreement, by the debtor. The Financing Statement filed by RCA on November 19, 2008, is valid.

### C. RCA/APC Security Interest Assignment

On January 7, 2009, Graphco alleges RCA attempted to assign its security interest in the Press Line to APC. On January 20, 2009, RCA or APC filed with the Kentucky Secretary of State an assignment of RCA's UCC Financing Statement. Kentucky's UCC provides means for a secured party to assign its interest to another party. KRS §355.9-514. Filing an assignment is not required to continue the perfected status of a security interest against creditors and transferees of the original debtor. KRS §355.9-310; 68A AM. JUR. 2D SECURED TRANSACTIONS § 254. Therefore, APC, as the assignee, stands in the place of RCA and takes the perfection date of RCA: November 19, 2008.

### III. Priority

The general rule for purposes of determining the priority of competing security interest is first in time of filing or perfection, first in priority. KRS §355.9-322(1)(a). The statute explains, "[p]riority dates from the earlier of the time a filing covering the collateral is first made or the security interest . . . is first perfected, if there is no period thereafter when there is neither filing nor

11

perfection." *Id.* A perfected security interest has priority over an unperfected security interest and if both interests are unperfected, the first to attach has priority. *Id.*

After looking at the security interests competing in this case, it appears both have been perfected by filing. The date of filing and perfection for the security interest of Graphco was January 20, 2009. The date of filing and perfection for RCA, and thus APC, was November 19, 2008. Applying the priority rules, it appears that APC has priority over Graphco in the Press Line.

Graphco asserts that due to its reservation of title clause in the Sales Contract with UGI it has priority over the Press Line. For support Graphco cites KRS §355.1-201(2)(ai), the definition of a security interest. While Graphco is correct that reservation of title creates a security interest, that does not mean that the security interest has properly attached or been perfected in order to defeat another perfected security interest. The Court finds that APC has priority in Press Line over Graphco and therefore Graphco's Motion for Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Graphco's Motion for Summary Judgment is DENIED.

12